## McDonald, Appellant, *v.* Eiler.

*Contracts—Proof—Payment—Presumption — Evidence — Sufficiency—Question for jury—Judgment non obstante veredicto.*

In an action in the court of common pleas to recover from the administrator of a decedent's estate for services rendered to the decedent in his lifetime upon an alleged oral contract, the clear, positive and distinct testimony of the plaintiff's daughter as to the contract and what was done thereunder was sufficient to take the case to the jury on the question as to whether or not there was a contract and whether the plaintiff had performed her obligations.

There being direct and positive testimony to the fact that services were rendered and were not paid for that question was likewise one for the jury.

Where it was conceded that the contract, if any, provided for payments at the end of each year there was no presumption of payment for the year during which the decedent died. No presumption of payment arises until payment is due. The defendant was not entitled to binding instructions in the face of positive testimony that the plaintiff had not been paid for services performed. It was, therefore, reversible error to enter judgment for defendant non obstante veredicto.

Argued April 11, 1923. Appeal, No. 102, April T., 1923, by plaintiff, from judgment of C. P. Crawford Co., Sept. T., 1921, No. 9, for defendant non obstante veredicto in the case of Florence E. McDonald v. J. J. Eiler, Administrator of P. A. Eiler, deceased. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Assumpsit to recover for services rendered upon a verbal contract. Before PRATHER, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $520. Subsequently the court, upon motion, entered judgment for defendant non obstante veredicto. Plaintiff appealed.

172, (1923).] Assignment of Error—Opinion of the Court.

*Error assigned* was the judgment of the court, quoting it.

*Otto Kohler,* and with him *Thomas & Thomas,* for appellant.

*Albert L. Thomas,* and with him *C. L. Webb,* for appellee.—In order that a contract may be enforceable its terms must be certain and explicit and not vague or indefinite: Wilson v. Pennsylvania Coal Co., 269 Pa. 127; Edgecomb v. Clough, 275 Pa. 90.

OPINION BY PORTER, J., July 12, 1923:

The plaintiff brought this action of assumpsit against the administrator of the estate of P. A. Eiler, deceased, to recover for services rendered to the decedent during his lifetime, under an alleged oral contract. She recovered a verdict in the court below, but the court entered judgment in favor of the defendant non obstante veredicto, which ruling the plaintiff here assigns for error.

The statement of plaintiff averred, in substance, that she entered into an oral contract with the defendant, in June, 1916, under the covenants of which she was to take care of the room in which he lived, do his washing and mending of clothing, do his purchasing of supplies for his larder, do the cooking of meals, and take care of him when he might be ill, for which services the decedent agreed to pay her the sum of $520 per annum, and that she performed said services from the 27th day of June, 1916, until his death, on March 19, 1921. The statement averred that the decedent had neglected to pay her for such services. The plaintiff being incompetent as a witness, was, of course, compelled to rely upon the testimony of other parties. The daughter of the plaintiff testified as to the details of the contract between the plaintiff and the decedent. The substance of her testimony was that the decedent, whose mother had recently died, came to the home of the plaintiff and said that he

had now nobody to look after him, that he would have to get a place to go to, and asked plaintiff if she would still continue to work for him as she had for his mother; that he would like to have her take care of his room, and do his washing and mending, and buy for him as she had done for his mother, and prepare meals for him and take things to eat to his room, and take care of him when he was sick, and that he said, "I will pay you $520.00 a year" and that the plaintiff replied, "That will be at the rate of $10.00 a week"; and that this was agreed upon, (page 11a). This witness was cross-examined as to the details of the manner in which the room was to be taken care of, and the cross-examination developed that the plaintiff was to continue to live at her own home with her family, was to go to the decedent's room to do the sweeping and dusting and make his bed; was to take the clothing to be washed and mended to her own home and there do the work; that plaintiff was not to do any cooking at the room of the decedent, but was, as often as he requested, to prepare food for him at her home and take it to his room. This testimony was clear, positive and distinct as to what was to be done under the contract; if it was true, it left nothing lacking to constitute a complete agreement. It must be borne in mind that this was not a proceeding in the orphans' court, but was a jury trial in the common pleas and it was for the jury to pass upon the credibility of the witnesses.

The evidence as to what the plaintiff had done under the contract, while not so specific as it might have been had the parties both been living and competent witnesses, yet was certainly sufficient to warrant a finding that the plaintiff had rendered the services by the contract contemplated. The daughter of the plaintiff, who was a competent witness, testified as to many things that the plaintiff had done, and that the decedent had shortly before his death expressed his satisfaction with the services rendered. Mr. Leonard who was an intimate friend of the decedent and frequently went to decedent's room

when he visited Meadville, testified that the room was kept in nice condition and that the decedent had, about three months before his death, said to him "A good many people think I am doing my own cooking, but I am not, Mrs. McDonald is." Mrs. Hageman, a sister of the decedent, who cannot be assumed to be biased in favor of the plaintiff, testified that the decedent had visited her at her home in the State of New Jersey, in September, 1920, and stayed there three weeks; that she asked him who attended to his room and mended his clothes and he said, "I depend upon Mrs. McDonald for everything. She attends to my room, does my laundry work, mends my clothes and nurses me when I am sick." Other witnesses testified that they had seen the plaintiff working about the room of decedent, performing such services as the contract required. With this evidence in the case the court could not declare, as matter of law, that there was not sufficient evidence to warrant a finding that there had been a valid contract and that the plaintiff had performed the services with regard to which the parties had covenanted. The learned judge of the court below so held, in his opinion, disposing of the motion of the defendant for judgment notwithstanding the verdict, but based his ruling sustaining that motion upon the ground that the evidence was not sufficient to overcome the presumption of payment.

The testimony as to whether the services of the plaintiff had been paid for by the decedent, while not great in volume, went directly to the question involved. The daughter of the plaintiff testified that during the latter years of the period of time in question she had lived in Pittsburgh but had visited Meadville the Christmas prior to the death of Mr. Eiler; that when she was returning to Pittsburgh Mr. Eiler had accompanied her to the station and carried her traveling bag, upon which occasion "He said he had not paid my mother. He said he intended to pay my mother as he had agreed to pay her. He told me how well pleased he was with her

work, and how she cooked for him," etc. Mrs. Hageman, the sister of decedent, testified that when she had the conversation with decedent, in September, 1920, she asked him what he paid Mrs. McDonald for her services and he said "I pay her nothing, I am going to remember her in my will." The testimony of this witness, to the effect that decedent said he was going to remember plaintiff in his will would certainly not have been sufficient to warrant a finding that there had been a contract to pay for the services, for in that conversation there was nothing said as to whether there was or was not a contract. But her testimony was direct and positive as to the facts that the services were being rendered and that the decedent said he was not then paying for them, and it is to be observed in this connection that the decedent did not at that time say whether or not he had agreed to pay for the services. No presumption of payment arises until payment is due. The learned judge of the court below, in his opinion stating his reasons for entering judgment in favor of the defendant notwithstanding the verdict, entirely ignored the theory upon which the trial had been conducted. The statement averred an employment at a yearly salary and the evidence was sufficient to warrant a finding that the averment was true. The judge had instructed the jury fully and accurately as to the presumption of payment for services in a case of this character, and the jury could not have failed to understand that the presumption of payment must prevail until overcome by satisfactory evidence. The charge, upon this point, was full and accurate, embracing among other pertinent suggestions, the following: "The presumption is that the services were actually paid for periodically, exactly as is the rule in the case of servants' wages. The presumption cannot be overcome by vague and uncertain testimony. Claims against a dead man's estate, which might have been made against him while living, are always the subject of just suspicion and require clear proof before they will be allowed." It was upon all hands agreed at the

trial that the services were to be paid for yearly, and the defendant submitted a point requesting the court to charge that: "According to the alleged contract as pleaded, payment would be due at the end of each year, and the presumption of law is that such payment was made, and hence before the plaintiff can recover she must prove by testimony clear, positive and affirmative that the payments were not made," which point the court affirmed. Under this instruction the jury found a verdict for $520, whereas the plaintiff was asserting a right to recover nearly five times that amount. It is, therefore, clearly apparent that the jury gave the defendant the benefit of the presumption of payment for all the years of service except the last. The defendant was not entitled to binding instructions upon the ground of presumption of payment, it being conceded that the payments were to be made at the end of each year; for the year expired with the 26th of June in each year, and there was no presumption that payment had been made for the services for the period between the 26th of June, 1920, and the 19th of March, 1921, the date of the death of Mr. Eiler. The verdict must be accepted as having established that the contract had been made and the services rendered in accordance therewith, and there being no presumption of payment for the services during the period last above indicated, the defendant was not entitled to binding instructions, and the court erred in entering judgment in his favor notwithstanding the verdict. The court having affirmed all the points submitted by defendant, except that asking for binding instructions, it is not necessary to remit the record to the court below, to the end that judgment be there entered upon the verdict.

The judgment is reversed and judgment is now entered in favor of the plaintiff upon the verdict of the jury.